# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF OKLAHOMA

| | | |
|---|---|---|
| (1) KELLY A. HENSLEY, an individual, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. 17-CV-827-R |
| | ) | |
| (1) THE CITY OF NICHOLS HILLS, | ) | |
| a municipal corporation; | ) | |
| (2) MICHAEL PUCKETT, Individually | ) | |
| (3) JORDAN CORN, Individually; and | ) | |
| (4) STEVEN COX, in his Official Capacity | ) | |
| | ) | |
| Defendants. | ) | |

## ORDER

Before the Court are two Motions to Dismiss in support of Defendants City of Nichols Hills ("City") and Steven Cox (Doc. 11), and Defendants Michael Puckett and Jordan Corn (Doc. 12). Plaintiff brings seven claims under 42 U.S.C. § 1983, the Fourth Amendment to the U.S. Constitution, and Oklahoma law regarding her arrest and treatment by Nichols Hills Police Department for "egging" cars in violation of 21 Okla. St. § 1787, Molesting a Standing Vehicle. Defendants City and Cox's Motion is GRANTED, and Defendants Puckett and Corn's Motion is GRANTED with respect to Claims 1, 2, 3, and 5, and DENIED with respect to Claims 4 and 6.

### I. Background

Plaintiff Kelly Hensley is a Texas attorney who was arrested on May 1st, 2017, in Nichols Hills for throwing eggs at several cars ("egging") near her parents' Oklahoma

1

residence. Defendants are three City employees involved with the incident: Detective Lieutenant Michael Puckett, Officer Jordan Corn, and City Chief of Police Steven Cox.

## A. Investigation and Charges

The Nichols Hills police investigation began on February 11th, 2017, when Detective Puckett and another City officer questioned Plaintiff and her parents at her parents' residence about an egging that occurred earlier that day. Doc. 1, at 4. Plaintiff denied knowledge of the egging, but voiced her concern regarding numerous parked cars in front of her parents' residence because she believed they were trespassing. *Id.* A few weeks later, Defendant Puckett allegedly tried to contact Plaintiff by phone multiple times to no avail—Plaintiff claims she received no such call. *Id.* at 5–6.

On March 14th, Defendant Puckett submitted a probable cause affidavit to the District Attorney's Office to support an arrest warrant for Plaintiff. The affidavit cited an eyewitness who described the egging suspect as having "sandy colored shoulder length hair and wearing a white blouse and light colored pants, possibly khaki." Doc. 1, at 5. The witness "wasn't sure if [Kelly] was the woman throwing the eggs and who he talked to at the door but was sure enough that he convinced himself that it was." *Id.* He further stated, "I think she looked like the person throwing the eggs, but cannot swear to it." *Id.* The affidavit also read that Plaintiff failed to return Defendant Puckett's calls. Plaintiff denies egging cars and maintains her innocence. *Id.* at 6. She claims that unlike the described suspect, Plaintiff has "long distinctive dark brown curly hair that is mid-back length" and was wearing "dark blue ripped jeans." *Id.* at 5.

The Oklahoma County District Attorney charged Plaintiff on April 28, 2017, with Molesting a Standing Vehicle for willfully and knowingly egging five cars without the owners' consent. *See* Doc. 18-2. 21 Okla. St. § 1787 makes it a crime to "deface or injure [any] automobile or motor vehicle, or to 'molest . . . any automobile' . . . without the consent of the owner of such automobile or motor vehicle."

**B. Arrest and Detention**

Plaintiff claims she was arrested on May 1st, 2017, in a "hostile and unprofessional" manner. Doc. 1, at 9. Defendants Corn and Puckett pulled Plaintiff mother's car over and asked her and Plaintiff to exit the vehicle. *Id.* at 8–9. Corn then asked Plaintiff to identify herself, handcuffed her, and read the charges aloud. *Id.* The handcuffs pinched Plaintiff's wrists tightly and Corn allegedly pushed her head to place her in the police vehicle. *Id.* As the Plaintiff sat on top of her cuffed hands in the backseat with the seatbelt restraining her neck, Corn searched through her purse. *Id.* at 9–10. Plaintiff claims that despite complaining of carpal tunnel pain and the tight handcuffs, Corn and Puckett refused to loosen them—Corn merely instructed her to keep her thumbs pointed upward. *Id.* at 10.

Next was Plaintiff's brief stint in the Oklahoma County jail, which she alleges was especially humiliating, frightening, and dangerous. Plaintiff was un-handcuffed, frisked by a female guard, photographed, fingerprinted, and booked. *Id.* at 11. She then spent five to six hours in a holding cell until her attorney could bail her out. *Id.* at 12.

Lastly, Plaintiff claims that Defendant Cox conducted a defamatory news interview with KFOR-TV that caused her severe "public ridicule" and "hatred." *Id.* at 13. Defendant Cox's alleged false statements include that Plaintiff lives with her parents, that Plaintiff

3

was seen on surveillance video egging cars, and implying that Plaintiff is guilty of egging: "I couldn't even imagine why someone would be upset why cars were parked on the street, on the public street, legally." *Id.* at 12–13, 18.

The District Attorney moved to recall Plaintiff's arrest warrant "in the best interest of justice" on May 9th, 2017 (Doc. 18-3), and the State immediately dismissed her case.

**C. The Complaint**

Plaintiff filed the instant complaint on August 3rd, 2017, asserting seven claims. Against the City, Puckett, and Corn:

1. Fourth Amendment illegal seizure regarding Plaintiff's unlawful arrest and detention in Oklahoma County Jail. Doc. 1, at 15.

2. Fourth Amendment excessive and/or unreasonable use of force during her arrest. Doc. 1, at 15–16.

3. Fourth Amendment malicious prosecution. Doc. 1, at 16.

Against Corn:

4. Fourth Amendment illegal search of Plaintiff's purse subsequent to arrest. Doc. 1, at 16.

6. State assault and battery regarding excessive force during arrest. Doc. 1, at 17.

Against Puckett and Corn:

5. Fourteenth Amendment Substantive Due Process violation regarding egregious conduct during Plaintiff's arrest and detention. Doc. 1, at 17.

Against the City:

7. State defamation regarding Cox's interview and false statements to K-FOR TV. Doc. 1, at 18–19.

## II. Motion to Dismiss Standard

A complaint may be dismissed upon a motion for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). Under Federal Rule of Civil Procedure 8(a)(2), a pleading must contain a 'short and plain statement of the claim showing that the pleader is entitled to relief.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 677–78 (2009). "The pleading standard Rule 8 announces does not require 'detailed factual allegations,' but it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Id.* at 678 (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). Dismissal is proper "if, viewing the well-pleaded factual allegations in the complaint as true and in the light most favorable to the non-moving party, the complaint does not contain 'enough facts to state a claim to relief that is plausible on its face.'" *Macarthur v. San Juan County,* 497 F.3d 1057, 1064 (10th Cir. 2007) (quoting *Twombly,* 550 U.S. at 127); *see Iqbal,* 556 U.S. at 676–80. The plaintiff cannot merely give "labels and conclusions, and a formulaic recitation of the elements of a cause of action." *Twombly*, 550 U.S. at 555. Such conclusory allegations are not entitled to the court's presumption for the plaintiff. Instead, the plaintiff must plead facts that at least makes the claims plausible and raise the "right of relief above the speculative level." *Id.* at 558.

## III. Discussion

Plaintiff brings six federal and state claims against Defendants Puckett and Corn and four claims against the City. Because Plaintiff attempts to hold the City liable for employees' alleged constitutional violations, the Court will first address Defendants Puckett and Corn's conduct before determining whether it warrants municipal liability.

**A. Claims Against Individual Defendants**

Defendants Puckett and Corn assert qualified immunity from Plaintiff's Section 1983 claims. Qualified immunity "protects government officials 'from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" *Pearson v. Callahan*, 555 U.S. 223, 231 (2009) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)). To overcome Defendants' asserted immunity, Plaintiff "must establish (1) that the defendant violated a constitutional or statutory right, and (2) that this right was clearly established at the time of the defendant's conduct." *Dodds v. Richardson*, 614 F.3d 1185, 1191 (10th Cir. 2010) (internal quotations omitted). "The law is clearly established when a Supreme Court or Tenth Circuit decision is on point, or if the clearly established weight of authority from other courts shows that the right must be as plaintiff maintains." *Harman v. Pollock*, 586 F.3d 1254, 1261 (10th Cir. 2009).

1. **Fourth Amendment Seizure**

Plaintiff's Claim 1 fails to plausibly assert that Defendants Puckett and Corn violated her clearly established Fourth Amendment right to be free from unlawful arrest. To comply with the Fourth Amendment's prohibition on unreasonable seizures, Plaintiff must show that Defendants arrested her without probable cause. *See Taylor v. Meacham*, 82 F.3d 1556, 1562 (10th Cir. 1996). "Probable cause for an arrest warrant is established by demonstrating a substantial probability that a crime has been committed and that a specific individual committed the crime." *Wolford v. Lasater*, 78 F.3d 484, 489 (10th Cir. 1996) (quoting Fed. R. Crim. P. 4; *Wong Sun v. United States*, 371 U.S. 471, 481 n.9

(1963)). A single eye-witness is typically sufficient to satisfy probable cause, assuming circumstances do not undermine that eyewitness's credibility. *See Hartz v. Campbell*, 680 Fed. App'x 703, 706 (10th Cir. 2017). The arresting officers must have "reasonably trustworthy information" to lead them to believe Plaintiff committed the crime. *Id.* Further, once a neutral magistrate issues an arrest warrant, officers executing that warrant maintain immunity unless "it is obvious that no reasonably competent officer would have concluded that a warrant should issue." *Messerschmidt v. Millender*, 565 U.S. 535, 546–47 (2012) (quoting *Malley v. Briggs*, 475 U.S. 335, 341 (1986)).

Plaintiff concedes that Defendants obtained an arrest warrant based on a probable cause affidavit. Doc. 1, at 6. Defendant Puckett's affidavit cited (1) an eye witness who identified Plaintiff as the suspect and (2) Plaintiff's failure to return Defendant Puckett's calls. Doc. 1, at 5. Plaintiff claims she looks nothing like the identified suspect, yet the eyewitness concluded (referring to Plaintiff), "I think she looked like the person throwing the eggs, but cannot swear to it." *Id.*

This eyewitness testimony and Defendant Puckett's investigation demonstrate that a "reasonably competent officer would have concluded that a warrant should issue." *Messerschmidt*, 565 U.S. at 547. Defendant Puckett met with Plaintiff on the day of the egging and confirmed that (1) she was staying at her parents' residence on the day of the alleged crime near where the alleged egging occurred and (2) she believed "numerous" cars trespassed on her parents' property as a result of a City parking ordinance, suggesting a potential motive. Doc. 1, at 4. Although the Court views Plaintiff's denial as true, the relevant probable cause inquiry is not whether Plaintiff actually committed the crime. *See*

7

*Crawford v. City of Kansas City, Kansas*, 952 F. Supp. 1467, 1474 (D. Kan. 1997) (citing *Dowling v. City of Philadelphia*, 855 F.2d 136, 141 (3d Cir. 1988). Nor is it dispositive that Plaintiff looks different from the alleged suspect. It is whether, at the time of the arrest, the officers demonstrated "a substantial probability" that Plaintiff committed the crime. *Wolford*, 78 F.3d at 489. Without witnessing the crime themselves, Defendants relied on "reasonably trustworthy information"—an eyewitness who appeared reasonably confident—and their brief interview with Plaintiff. *Hartz*, 680 Fed. App'x at 706. The Court defers to the magistrate's probable cause determination due to the "strong presumption in favor of warrant searches" and finds that Plaintiff fails to overcome this presumption. *United States v. McKneely*, 6 F.3d 1447, 1455 (10th Cir. 1993); *see also Messerschmidt*, 565 U.S. at 547–48.

Plaintiff responds that even if the eyewitness testimony demonstrated a substantial probability that she egged cars, "no reasonably trained law enforcement officer would think" that egging violates 21 Okla. St. § 1787, Molesting a Standing Vehicle. Doc. 18, at 5. The statute makes it a crime to "deface or injure [any] automobile or motor vehicle, or to 'molest . . . any automobile' . . . without the consent of the owner of such automobile or motor vehicle." "Deface" means "mar" or "spoil the surface or appearance of." BLACK'S LAW DICTIONARY (10th ed. 2014); AMERICAN HERITAGE DICTIONARY (5th ed. 2017). Forget a "reasonably trained" officer—ask an adolescent prankster whether tossing eggs at cars spoils their appearance. That's the point. Egging qualifies as defacement, and Plaintiff's alleged defacement is illegal because she does not contend she had consent to egg these cars. She responds that the affidavit failed to mention injury to the cars, but the

8

statute criminalizes "deface[ment] *or* injur[y]." Defendants clearly found probable cause for defacement, which does not require permanent damage. Therefore, Defendants maintain qualified immunity from Claim 1.

   2. **Fourth Amendment Excessive Force**

The next question is whether Defendants Puckett and Corn used reasonable force to effectuate Plaintiff's lawful arrest. "Under well-settled Supreme Court precedent, a law-enforcement officer's 'right to make an arrest . . . necessarily carries with it the right to use some degree of physical coercion . . . to effect it.'" *A.M. v. Holmes*, 830 F.3d 1123, 1151 (10th Cir. 2016) (quoting *Graham v. Connor*, 490 U.S. 386, 396 (1989)). Permissible force "is not unlimited," and it must be reasonable. *Cortez v. McCauley*, 478 F.3d 1108, 1125 (10th Cir. 2007). Handcuffing cases require "an actual, non-de minimis physical, emotional, or dignitary injury to succeed on a claim." *Fisher v. City of Las Cruces*, 584 F.3d 888, 899 (10th Cir. 2009). Plaintiff alleges that Defendants handcuffed her too tightly for thirty minutes and refused to loosen the handcuffs, merely instructing her to keep her thumbs pointed upward to relieve the pain; this left her wrists red and swollen. Doc. 1, at 9–11. Defendants also pushed her head down to place her into the police vehicle. *Id.* at 11.

Claim 2 does not allege a violation of a clearly established constitutional right because Defendants' force caused de minimis harm. Defendants handcuffed Plaintiff for only thirty minutes until they could process her at the County jail. They instructed her how to relieve the pain when she complained and while the handcuffs left red marks, this is "too little evidence of any actual injury." *Cortez*, 478 F.3d at 1129. They pushed her head down to get her into the vehicle, presumably to avoid her head hitting the door frame. In other

words, her arrest was "no more harmful . . . than the normal custodial arrest. She was handcuffed, placed in a squad car, and taken to the local police station . . . [, which was] inconvenient and embarrassing to [her], but not so extraordinary as to violate the Fourth Amendment." *Atwater v. City of Lago Vista*, 532 U.S. 318, 354–54 (2001); *see Cortez v. McCauley*, 478 F.3d 1108, 1128–29 (10th Cir. 2007) ("We have little difficulty concluding that a small amount of force, like grabbing Rick Cortez and placing him in the patrol car, is permissible in effecting an arrest under the Fourth Amendment."). Her excessive force claim does not plausibly assert a clearly established Fourth Amendment violation.

3. **Fourth Amendment Malicious Prosecution**

Plaintiff's Claim 3 is that Defendants Puckett and Corn violated her Fourth Amendment right to be free from malicious prosecution. There are five elements to a Section 1983 malicious prosecution claim: "(1) the defendant caused the plaintiff's continued confinement or prosecution; (2) the original action terminated in favor of the plaintiff; (3) no probable cause supported the original arrest, continued confinement, or prosecution; (4) the defendant acted with malice; and (5) the plaintiff sustained damages." *Margheim v. Buljko*, 855 F.3d 1077, 1082 (10th Cir. 2017). Plaintiff claims that (1) Defendants made false allegations leading to her arrest, (2) the State dismissed her case "in the best interest of justice," (Doc. 18-3) (3) no probable cause supported her arrest, (4) Defendants maliciously made up this "bogus charge" (Doc. 13, at 9) despite insufficient evidence and a comparable, yet less harsh, municipal ordinance, and (5) Plaintiff sustained hours of detention and irreparable harm to her personal and professional reputation. As discussed above, Defendants had probable cause to arrest Plaintiff, which nullifies the third

10

factor for malicious prosecution. Therefore, she fails to plausibly claim that Defendants violated her clearly established constitutional right to be free from malicious prosecution.

4. **Fourth Amendment Search**

Plaintiff next asserts a Fourth Amendment claim that Defendant Corn unlawfully searched her purse incident to arrest. The search incident to arrest exception to the Fourth Amendment's warrant requirement applies when an object is on the arrestee's person or in the area "within [her] immediate control[,] . . . the area from within which [s]he might gain possession of a weapon or destructible evidence." *Chimel v. California*, 395 U.S. 752, 763 (1969). The Court has since applied this exception to the vehicle context when a suspect has been detained away from a vehicle and is no longer "within reaching distance." *Arizona v. Gant*, 556 U.S. 332, 351 (2009). Plaintiff claims that because she was handcuffed in a police car and unable to reach her purse, Corn's warrantless search of her purse was no longer justified. She does not specify where her purse was located when Corn initiated this search, but the Court reads Plaintiff's complaint "in the light most favorable to [her]"—such that Plaintiff left her purse in her mother's car when Corn arrested her outside the vehicle. *Macarthur,* 497 F.3d at 1064; s*ee* Doc. 1, at 8–9 ("Defendant Corn asked Kelly to step behind the vehicle. [He] then placed Kelly under arrest[.] . . . Defendant Corn can be viewed on body camera footage searching Kelly's purse.").

Plaintiff's Claim 4 plausibly asserts a clearly established Fourth Amendment violation because Corn searched the purse once Plaintiff was already handcuffed in the police car with the purse outside her "immediate control." *Chimel*, 395 U.S. at 763; s*ee also United States v. McCane*, 573 F.3d 1037, 1041–42 (10th Cir. 2009) (acknowledging

11

that a similar search incident to arrest was "wholly [in]consistent" with *Gant*, 556 U.S. at 351, but applying the good faith exception because the search preceded *Gant*).

Defendant relies on three inapposite cases to show that Plaintiff's constitutional right is not clearly established. *United States v. Perdoma*, 621 F.3d 745, 750–53 (8th Cir. 2010), concerned a bag in "an officer's exclusive control" and "in close proximity to where [the arrestee] was restrained." *Id.* at 750. Similarly, *Christian* and *Atwater* both found necessary inventory searches of effects on an arrestee's person. *See United States v. Christian*, 190 F. App'x 720, 722 (10th Cir. 2006) ("After the arrest and before transporting him to jail, the officers searched Mr. Christian's backpack for contraband that would not be allowed in jail . . . ."); *Atwater*, 532 U.S. at 355; *see also United States v. Edwards*, 632 F.3d 633, 644 (10th Cir. 2001) ("An inventory search conducted as part of regular procedures, and for administrative rather than investigatory purposes, does not require a warrant."). Conversely, Defendant could not justify his warrantless search because he had restrained Plaintiff out of reach from her purse. *See Chimel*, 395 U.S. at 763.

5. **Fourteenth Amendment Substantive Due Process**

Plaintiff also claims that Defendants Puckett and Corn conducted her arrest in a manner "so outrageous or egregious that it was conscience shocking" and in violation of her clearly established Fourteenth Amendment substantive due process right. Doc. 1, at 17. This claim is plainly barred by the Supreme Court's instruction that "substantive due process analysis is . . . inappropriate" when a Section 1983 litigant's claim is "covered by the Fourth Amendment." *Cty. of Sacramento v. Lewis*, 523 U.S. 833, 842–43 (1998) ("[W]here a particular Amendment provides an explicit textual source of constitutional

protection against a particular sort of government behavior, that Amendment, not the more generalized notion of substantive due process, must be the guide for analyzing these claims.") (quoting *Albright v. Oliver*, 510 U.S. 266, 273 (1994)). Plaintiff improperly attempts to recast her Fourth Amendment unlawful arrest and excessive force claims under the Fourteenth Amendment. Doc. 1, at 17. Claim 5 therefore fails to plausibly assert a clearly established Fourteenth Amendment violation.

6. **State Assault and Battery**

Claim 6 alleges that Defendant Corn committed assault and battery under Oklahoma law when he used "excessive force" to arrest her.[1] The Court maintains supplemental jurisdiction over this claim and applies Oklahoma substantive law. *See Erie R. Co. v. Tompkins*, 304 U.S. 64, 78 (1938). "Under Oklahoma law, a battery occurs when the defendant [intentionally makes] a harmful or offensive contact with the person of the plaintiff and the act results in a harmful or offensive contact. . . . Every battery necessarily includes an assault." *Courtney v. Oklahoma ex rel., Dep't of Pub. Safety*, 722 F.3d 1216, 1228 & n.7 (10th Cir. 2013) (citing Okla. Uniform Jury Instr., Civ.2d, § 19.6 (2012); *Hall v. State*, 309 P.2d 1096, 1100 (Okla. Crim. App. 1957)). Qualified immunity is a federal doctrine, so Defendant's lack of a "clearly established" Fourth Amendment violation for excessive force is not dispositive. *Pearson*, 555 U.S. at 231. Instead, the Court must assess a state assault and battery claim's plausibility by determining whether "the use of force

---

[1] Defendant cites the Court's Local Rules to argue that Plaintiff's assault and battery claim should be "deemed abandoned" because she did not respond to that section of Defendant's motion. *See* Doc. 20, at 9. This ignores *Twombly*'s instruction to "view[] the well-pleaded factual allegations in the complaint as true and in the light most favorable to the non-moving party." 550 U.S. at 127. LCvR7.1(g) only "deem[s] confessed" *motions* without response, not *claims* that may still assert plausible grounds for relief.

[was] . . . 'necessarily committed by a public officer in the performance of any legal duty . . . .'" *Thetford v. Hoehner*, No. 05-CV-0405-CVE-FHM, 2006 WL 964754, at *6 (N.D. Okla. Apr. 12, 2006) (quoting 21 Okla. Stat. § 643(1)).

Plaintiff presents plausible grounds for relief. Defendant had a legal duty to arrest Plaintiff, handcuff her, and place her in his police vehicle because there was probable cause to believe she committed a crime. However, when viewing Plaintiff's allegations in the light most favorable to her, she plausibly claims that Defendant exceeded the "necessar[y force] committed by a public officer in the performance of a[] legal duty" when he tightened the handcuffs to cause red marks on her wrists and "pushed her on the head forcefully" to place her in the police vehicle. Doc. 1, at 9. Plaintiff was neither resisting arrest, armed, nor suspected of a violent crime. Further, there is no de minimis exception to state assault and battery claims as there is to Fourth Amendment claims. *See Qutb v. Ramsey*, 285 F. Supp. 2d 33, 51 (D.D.C. 2003). Thus, dismissal of Claim 6 is improper.

### 7. Removing Cox as a Party

Defendant Cox is a redundant party. Plaintiff fails to plead allegations against him in her Complaint. *See* Doc. 1. Instead, she merely lists him in the heading as a party "in his official capacity." *Id.* The Court assumes for purposes of the Motions that Plaintiff's municipal claims implicate Defendant Cox as the City's agent because he is the Chief of Police, yet such claims are redundant. Official capacity suits "generally represent only another way of pleading an action against an entity of which an officer is an agent." *Monell v. Department of Social Services,* 436 U.S. 658, 60 n.55 (1978). As the Court examines

below, Plaintiff already pleads these claims against the City. *See* Doc. 1, at 15–16, 18. Defendant Cox is therefore dismissed.

## B. Municipal Liability

In Claims 1, 2, and 3, Plaintiff attempts to hold the City liable for its employees' conduct: that Defendants Puckett and Corn violated her Fourth Amendment rights to be free from unlawful arrest, unreasonable force, and malicious prosecution. Moreover, she alleges in Claim 7 that the City is liable for defamation resulting from Defendant Cox's allegedly malicious and false statement.

### 1. Fourth Amendment Claims

Plaintiff's three constitutional claims against the City do not present plausible grounds for relief. In order to state a plausible claim for municipal liability under 42 U.S.C. § 1983, a plaintiff must allege the existence of (1) an official policy or custom, (2) a direct causal link between the policy or custom and the constitutional injury alleged, and (3) deliberate indifference. *Schneider v. City of Grand Junction Police Dep't*, 717 F.3d 760, 769–71 (10th Cir. 2013) (citing *Monell*, 436 U.S. at 691–92). The official policy prong distinguishes city conduct from employee conduct—"a municipality cannot be held liable *solely* because it employs a tortfeasor—or, in other words, a municipality cannot be held liable under § 1983 on a *respondeat superior* theory." *Monell*, 436 U.S. at 691. Plaintiff alleges that the City had an official policy of "deficient training" that directly caused her Fourth Amendment injuries. Doc. 1, at 2. Further, deliberate indifference is inferred because Defendants' conduct was "so egregious" that the need for training is "obvious." Doc. 14, at 2 (quoting *City of Canton, Ohio v. Harris*, 489 U.S. 378, 390 (1989)).

Plaintiff's municipal training claim is merely a "formulaic recitation of the elements of a cause of action." *Twombly*, 550 U.S. at 555. First, Plaintiff lists a general policy of "deficient training" and describes the two officers' conduct without detailing what about their training was deficient. Doc. 1, at 2. "That a particular officer may be unsatisfactorily trained will not alone suffice to fasten liability on the city, for the officer's shortcomings may have resulted from factors other than a faulty training program." *Canton*, 489 U.S. at 390–91. Otherwise, Plaintiff would be able to hold the City liable for isolated acts of its employees without demonstrating a required City policy. Second, Plaintiff claims that Puckett and Corn's training "was a cause of the constitutional violations," but fails to outline a direct causal link. Doc. 1, at 2. Had the City better trained its officers, how would that have prevented Plaintiff's alleged injuries?

Third, Plaintiff alleges that the City's deliberate indifference is facially "obvious." This "obvious" exception originates in the Supreme Court's *Canton* decision, which stated that a plaintiff's failure to train claim may not always need to "show[] a pattern of constitutional violations." *Bd. of County Comm'rs of Bryan County, Okla. v. Brown*, 520 U.S. 397, 409 (1997) (citing *Canton*, 489 U.S. at 390 & n.10). However, this exception is reserved for "a narrow range of circumstances [where] a violation of federal rights may be a highly predictable consequence" of a failure to provide adequate training. *Id.* Nothing about Plaintiff's allegations suggest they are an obvious consequence of deficient training. Plaintiff claims that City officers—pursuant to a lawfully obtained arrest warrant—pulled her over, handcuffed her, placed her into the police vehicle, detained her in a cell with other female inmates, and then released her on bond later that evening. Even if Defendants used

some force to effectuate this arrest, which the Court assumes for purposes of the Motions, Plaintiff fails to allege "that [the C]ity's failure to train reflects deliberate indifference to the constitutional rights of its inhabitants." *Canton*, 489 at 392. Instead, Plaintiff seeks to improperly tack on municipal liability for the isolated conduct of the City's employees.

Plaintiff also fails to plead plausible Section 1983 municipal claims because there are no underlying constitutional violations. "When there is no underlying constitutional violation by a county officer, there cannot be an action for failing to train or supervise the officer." *Apodaca v. Rio Arriba Cty. Sheriff's Dep't*, 905 F.2d 1445, 1447 (10th Cir. 1990) (citing *City of Los Angeles v. Heller,* 475 U.S. 796, 799 (1986)). As discussed above, her claims 1, 2, and 3 against the City rely on underlying Fourth Amendment allegations that the Court finds implausible. Therefore, Plaintiff cannot derive municipal liability from Puckett and Corn's conduct.

   **2. State Defamation**

Lastly, Plaintiff alleges in Claim 7 that the City is liable for defamation. Again, the Court maintains supplemental jurisdiction over state claims and applies Oklahoma substantive law. *See Erie*, 304 U.S. at 78. A private defamation claimant must show "(1) a false and defamatory statement, (2) an unprivileged publication to a third party, (3) fault amounting at least to negligence on the part of the publisher; and (4) either the actionability of the statement irrespective of special damage [per se], or the existence of special damage [per quod]." *Tanique, Inc. v. State ex rel. Oklahoma Bureau of Narcotics & Dangerous Drug*s, 99 P.3d 1209, 1217 (Okla. Civ. App. 2004). Plaintiff claims that the City, through its agent Defendant Cox, published defamatory statements to K-FOR TV "maliciously and

17

with the intent to destroy the Plaintiff's reputation and ability to earn a living in her chosen profession." Doc. 1, at 18.

Oklahoma's Governmental Tort Claims Act protects the City from liability for Defendant Cox's statements. "The state or a political subdivision shall not be liable under the provisions of The Governmental Tort Claims Act for any act or omission of an employee acting outside the scope of the employee's employment." 51 Okla. Stat. § 153(A). "'Scope of employment' means performance by an employee acting in *good faith* within the duties of the employee's office . . . ." 51 Okla. Stat. § 152(12) (emphasis added). Plaintiff alleges that Defendant Cox's statements were made "*maliciously*," with "knowledge of their falsity" and to destroy her reputation. Doc. 1, at 18. Cox's statements surely could not have been both malicious and in good faith. The statements were thereby necessarily outside the scope of Cox's employment, and they cannot subject the City to liability for defamation. Plaintiff fails to plead a plausible defamation claim.

## IV. Conclusion

Plaintiff is left with Claims 4 and 6 against Defendant Corn. Defendants Puckett and Corn maintain qualified immunity from Claims 1, 2, 3, and 5, which means the City cannot be held liable on these claims under Section 1983. The City is also not liable for Defendant Corn's allegedly defamatory statement. Defendants City and Cox's Motion to Dismiss is hereby GRANTED. Defendants Puckett and Corn's Motion to Dismiss is GRANTED with respect to Claims 1, 2, 3, and 5 and DENIED with respect to Claims 4 and 6.

18

IT IS SO ORDERED this 18th day of October, 2017.

*David L. Russell*
DAVID L. RUSSELL
UNITED STATES DISTRICT JUDGE